The next case, number 221478, Stefano Granata et al. v. Andrea J. Campbell et al. At this time, would Attorney Benbrook please introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, I'm Bradley Benbrook for the Plaintiffs and Appellants. And if I may please ask for three minutes for rebuttal. You may. Thank you. The complaint in this case alleges that statutory and the regulatory regime at issue here operates to ban a huge number of handguns in common use. I want to just say something at the outset, which is you can do the argument however you want, but I think a major question on everyone's mind is why we aren't remanding the case. You may just think we should remand it. Yes, we did argue for remand and we would be satisfied with a remand for many reasons. So you've heard the reasons that your opponents have given for not remanding? Yes, we filed a reply brief on that. Do you want to just argue that point, I think, to begin with would be helpful to us. Before you start that, can I ask you a preliminary question? If we were to remand, would you think it would be in the interest of efficiency for you to file an amended complaint in view of the new framework, or are you content to stand on the current complaint?  It could be cleaner to amend under Bruin. The issues are certainly framed, but we would be pleased to file an amended complaint on remand. The Commonwealth's argument basically is that this can all be handled on appeal, and certainly Bruin and Heller did come to the Courts of Appeal and the Supreme Court in a similar context, and the Supreme Court ordered that judgment be granted for plaintiffs. And so that result is possible here, we agree, but given the posture of the case, we don't believe it could be that the district court could simply be affirmed in light of Bruin as an intervening statement of the law. Do you want to just address the question of how Bruin changes those presumptively lawful categories, of which your opponents suggest one of them, it falls within, so there's really nothing about Bruin that changes the state of the world as existed prior to the district court's decision? Right, we certainly disagree strenuously with that, Your Honor. Massachusetts can't avoid Bruin's test by calling these regulations presumptively lawful conditions or qualifications on commercial sale for many reasons. First, Heller referred to the list of longstanding regulations that could be presumptively lawful, and McDonald reiterated that Heller's list referred to longstanding regulations. The regulations here plainly are not longstanding. Further, Bruin confirms that Heller's list of these regulatory measures did not create any sort of separate test or safe harbor. Rather, it said twice that if the plaintiff's conduct, proposed conduct, is covered by the text of the Second Amendment, the only way, and it uses the term, the word only, the only way a court can find that that plaintiff's conduct falls outside the Second Amendment's protection. Could you, on your view of how to read Bruin in light of the presumptively lawful categories referenced in Heller, how do you understand the two to relate to one another then? Does that presumptively lawful language in Heller now just get subsumed so it's effectively not worth looking at? We just look to Bruin? Well, I do, actually, in the sense that Bruin, six members of the Supreme Court, signed on to a holding, repeated twice, that the only way a court can. But they also signed on to Heller. I'm just trying to figure out how those two pieces fit together. What is the role of the presumptively lawful categories under Bruin, in your view? Okay, I'll give you a concrete example. Bruin's discussion of the sensitive places doctrine addresses Your Honor's point directly, I believe. Just because a state calls a place sensitive in a new regulation doesn't mean it gets a free pass because some places have been designated as sensitive places in the past. Bruin makes clear that any new sensitive place still has to be put to its test. And the same is true of any contended condition or qualification. So that's what I'm saying. What's the role of it being presumptively lawful then? If you are right about how Bruin is read, the word presumptively seems to have no function. I don't think that that presumption cannot overtake the presumption that Bruin announces. Is your position that the word presumptively in Heller basically just has no meaning anymore? It has to be fit within Bruin is our position, Your Honor. Is the consequence of that that the word presumptively in Heller now has no legal effect? Well, as I reiterated earlier, the presumptively lawful concept in Heller was pegged to that regulatory measure being longstanding, which this is not. So respectfully, the Court does not have to address that because this is not a longstanding regulation. But what I really want to stress further on this point is the regulations You're saying that the presumptively lawful only goes to longstanding regulations or places recognized as sensitive and that it can't encompass any new categories of weapons restrictions or places deemed sensitive. Our position is it still has to be put to Bruin's test, yes. Six members of the Court said that if the plaintiff's conduct is covered If the presumption is in place, it means it's rebuttable and it shifts the burden. So either the presumption is there with the burden shifting or it's not and the burden would be on the State to defend it. I'm not sure I follow. There's a simple point, which is that under Heller, if we didn't have Bruin, it seemed like the State would not have to show a longstanding historical basis for things in those categories because presumptively they would be lawful. You're now saying that's not the case. With respect to everything, you have to apply Bruin's test, so the State always has to show as to everything, no matter whether it's about safety regulation, no matter whether it's about a sensitive place, no matter whether it's a felony restriction. You better show that there is a historical antecedent for that thing, just as you would to things outside those categories. That makes the categories irrelevant. Well, Your Honor, no. So the longstanding qualifier is still there. As I said, in Bruin, the sensitive places doctrine is the great example. Some sensitive places, the Court in Heller said, we assume are sensitive and can be regulated. The point is not all sensitive places or not all designations of sensitive places are automatically given a presumption. But if I could stress, Your Honors, these regulations can't properly be called conditions or qualifications. One way to understand it would be we know that sensitive places that are longstanding are lawful. So as long as it's like one of those things, you don't have to have a direct antecedent to it because it's like one of the things that qualifies. You're saying that's wrong? No. Bruin said that you, I would only modify that by saying Bruin said you still have to analogize to those sensitive places. Well, but if that's the case, then the key parts of Bruin that's new isn't really in play here because all we're doing is applying the category that Heller identified and figuring out whether these things fit within that category, which we had to do under Heller. So how is Bruin adding anything? Your Honor, I can't add any more to what I've already said. If I could please make the point that these regulations here can't be properly called conditions or qualifications. Massachusetts applies the label, but these so-called conditions operate to ban huge numbers of handguns in common use. Marzarella in the Third Circuit makes the point, well, it says just because the government calls it a condition or qualification doesn't make it so. Courts must review the nature and content of the regulation. The Renner ruling in California just last week says courts need to look to the substance, not the form of the regulation. A condition or qualification on the sale of arms is a hoop someone must jump through to sell a gun, such as obtaining a license, establishing a lawful premise, et cetera. That's what the Renner court said, and that applies here. If the substance or function is to ban guns, then it's not a condition or qualification or sale. I think the First Amendment analogy is useful here. Bruin repeatedly analogizes to the First Amendment. So it's akin to zoning regulations or time, place, and manner regulations. If the effect is to significantly suppress speech, it's a First Amendment violation, even though the local government is saying, well, we're just calling it, this is just a time, place, and manner regulation. You look to the substance. Regulations can certainly amount to a de facto ban, but how can we decide that on a Rule 12b6 motion? Don't we need discovery and get some agreement on what the facts are in order to decide a question like that? Yes, Your Honor, our position is that it certainly could be the case that some factual development is needed, but Heller, Cayetano establish, and Bruin confirms that handguns are in common use, and therefore cannot be banned. No handgun can be banned? Well, an operable handgun, an unsafe handgun? A handgun that's demonstrably dangerous above and beyond the normal operation of a firearm? Certainly, Heller and Bruin confirmed that the dangerous and unusual exception to the Second Amendment is it takes certain dangerous and unusual weapons out of the Second Amendment's protection, but that's not the argument here. The argument here is handguns in common use in 47 other states aren't eligible for sale in Massachusetts because they don't have the particular features that the Attorney General has identified. Heller thinks should be on there to make them more safe than guns in common use throughout the country, and that result just simply cannot stand under Heller or Bruin. So the Second Amendment becomes the lowest common denominator? If some states don't believe in safety regulations, a state like Massachusetts can't enact them, even though they're common-sense safety regulations, such as having a safety on a handgun? No, Bruin does not say that, Your Honor. No, of course it doesn't. What it says is if regulations function to ban guns, then they have to be put to Bruin's test. But every condition or qualification on a type of gun, you're saying that if a... Let me understand. If there was a restriction on a handgun because of a concern about the danger it posed in the recoil, effect of the recoil or something like that, a restriction on something that had that effect, you would say is impermissible? Well, I would say it's not... Or only permissible if the arm itself doesn't qualify as an arm under the Second Amendment? Well, yes, I believe that's the case, Your Honor. So if it qualified as an arm under the Second Amendment, then that restriction on the sale of that handgun would, in your view, be a ban, even though it's just a condition or qualification on sale? Well, Your Honor, there's a sort of a battle of the implication of one. Massachusetts argues that our position, the implication is that if one handgun is banned, it's a violation of the Second Amendment. We argue that the implication of Massachusetts' argument is so long as citizens have at least one handgun, the Second Amendment isn't implicated. This case is far from either of those extremes. But you can see that something that's dangerous and unusual, can be regulated. Is that correct? Yes, but Heller clarifies that, yes. Okay, so is dangerous and unusual a question of fact in the first instance, or is it a question of law? Probably, frankly, it's probably a legislative fact under Heller. There certainly is room for factual development in the district court on that point. But I would stress here, by banning and restricting the sale of huge numbers of guns in common use in 47 other states, by definition, those guns are not dangerous and unusual. Cayetano says, Justice Alito and Justice Thomas clarified in Cayetano, although they didn't need to, Heller is very clear. It must be dangerous and unusual. And the guns that are being banned currently in Massachusetts are neither, frankly. Thank you, Your Honor. Thank you, Counsel. At this time, if Attorney Casey would introduce himself on the record to begin. Good afternoon, Your Honors, and may it please the Court. Tim Casey for the appellees in this case. Your Honors, a central but not the only fatal defect in both plaintiff's complaint and in their arguments to this Court, are the premise that the Massachusetts safe handgun regulations function as a handgun ban. They do not function in that way. They do not limit in any way. But isn't that, Counsel, isn't that a question of fact, shouldn't be decided on a motion to dismiss? Because certainly one can conceive of a regulatory scheme that's called regulation that really is a ban. Your Honor, I don't think the question of whether this, the impact that it has on individual plaintiff's rights to keep and carry a firearm for armed self-defense, which the Court said in Heller and McDonald and Bruin was the central component of the Second Amendment, as a matter of law, it's clear that these regulations do not function as a limitation on the individual plaintiff's right to keep and bear arms for self-defense. How do I get that from the plaintiff's complaint? You would get that from a couple of sources, Your Honor. First, the legal sources that they cite, which make clear that Massachusetts regulations function as a limitation solely on commercial retailers. They limit commercial retailers' ability to sell a small number of arms, handguns, that don't pass minimum safety requirements and don't have certain safety features. It does not, the individual plaintiffs remain free to purchase, it's now over 1,100 weapons on the approved firearms roster through a commercial transaction. They can also purchase the 18 weapons that they identify in their complaint that are not on the roster through a private sale. And none of the, not Section 123, not the Attorney General's regulations, impose any limitation on their ability to possess and carry these weapons in the home or in public. Let me just understand how this again fits into Heller versus Bruin and whether the force of your argument is a suggestion that Bruin is just irrelevant to the case because it didn't overrule Heller. Is the idea that because of the feature you're describing, this just is a condition or qualification on sale and that any such condition or qualification Heller says is presumptively lawful and Bruin doesn't change that? Bruin does not change the... I mean, is that your position, the way I just described it? Your Honor, our position is that the status of these regulations as conditions and qualifications on the commercial sale of arms is one of three reasons why these regulations... Three independent reasons? Three independent reasons. So let's just stick with that first independent reason. It's a condition or qualification on sale in your view? Yes. And just play out for me, given that you say it's that, what follows from that with respect to how we're supposed to do the analysis that bears on the question of whether we should remand in light of Bruin? Your Honor, because it's referred to as a presumptively lawful regulatory measure, Judge Thompson, as you indicated, there's a suggestion that it's a presumption. A presumption can be rebutted. So in theory, a presumption could be rebutted by demonstrating that even though it falls into one of these categories, it nonetheless has a very significant impact on the right to keep and carry arms for lawful self-defense. Here, as a matter of pleading, there is nothing in the complaint that would suffice to overcome this presumption. The most that can be said about the complaint is found in paragraphs 36 and 44, where the plaintiffs plead on information and belief that there are lots of handguns that aren't available on the roster. That simply is both a conclusion masquerading as a fact. It's speculative. It's not enough to survive Iqbal and Twan. Okay, so taking that first theory, you've now heard your opponent says you're misreading that language in Heller post-Bruin, given what Bruin says about the only way and given the longstanding language. So what's your answer to that? And why wouldn't we, since there's at least a question on that, think the better way to do it is like we ordinarily do, which is go back to district court, let the district court have a chance to hear about this, write a reasoned opinion. We'll then have a reasoned opinion on that question. We can then review that on appeal. Your Honor, nothing in Bruin expressed disapproval of, cast any doubt on... Well, what about that only when language? I'm sorry, Your Honor. What about that only when language? In other words, if it falls within the text. You're not saying that these regulations don't fall within the text of the Second Amendment, are you? We are, Your Honor. We make a textual argument that these regulations do not run afoul of the text of the Second Amendment. That is actually our first argument. Run afoul is different than fall within. So when you say, the way Heller says it, it's presumptively lawful. That's not an argument that it's not subject to the Second Amendment. It's presumptively lawful under the Second Amendment, is how I would have read it. Am I misreading it? Your Honor, we read it as because it, these are, because these are longstanding exceptions, essentially, to the Second Amendment. They fall outside of the Second Amendment. Well, then why do they use presumptively? That sounds like you could overcome it. There'd be nothing to overcome if it's outside the Second Amendment. It's game over. Because it's possible that a plaintiff could demonstrate that even though it falls into one of these categories, it nonetheless has a significant impact on the right of law-abiding citizens to engage in armed self-defense, to keep and carry a weapon in the home and in public. Here... Well, then if that's the question, though, then... You're saying that there's no basis in the pleading to conclude that they're alleging that possibility? That's their whole pleading, that it's an effective ban. Your Honor, that is a conclusion masquerading as a fact that is undermined by, that's not a fact you need take as true, both because it's conclusory, because it's speculative, and because it's contradicted by what is in the 12B6 record, which is the approved firearms roster, which lists over 1,100 weapons, 1,100 handguns that may be purchased in a commercial transaction. And this significant impact test, well, two things on that. The significant impact test that you just identified, where's that come from? Your Honor, that doesn't... I'm not relying on any cases. Some showing need be made to overcome the presumption that these are presumptively lawful regulations that fall outside the scope of the Second Amendment. So it would be incumbent upon plaintiffs, and this is why we, in our view, this is part and parcel of the textual... Okay, and then second question, which is when you say the fact that other handguns or guns are available undermines their contention, I guess I'm not entirely following why, if their contention is that the particular versions, each individual one, would be significantly impacted in your ability to possess it. Your Honor, because the Second Amendment right is not the right to keep and carry a weapon with the owner's preferred finish or with an ergonomically comfortable grip. It is a right by law-abiding citizens to engage in armed self-defense. And so you're saying all the other things on the roster are all so similar to the type of thing that's restricted that it's not a meaningful restriction? Yes, Your Honor, I'm saying... Is there anything in the record that resolves that one way or the other, or there's the pleading to the contrary? The pleading is insufficient. The matters of which this Court may take judicial notice, the official records of the State that indicate that there are over 1,100 weapons on the roster, and the way that legally these regulations and statute operate. Again, not as a restriction in any way of the individual plaintiff's license to carry. They can possess... They don't limit their possession and carrying of any handgun? But they see their right as a right to bear and carry any commonly used handgun, or any handgun that's in common use. And there is language in both Bruin and Heller which is supportive of that proposition. So if these banned handguns are handguns in common use, or these... I don't want to use the word banned. These unapproved handguns are handguns that are in common use. I'm struggling with the notion of how we can uphold your position at least on a 12b6 motion without taking any proof. Your Honor, a couple of points. First, Heller and McDonald, of course, involved total bans on handguns. Bruin... Your Honor, I would point to this Court's decision in Worman, which admittedly a pre-Bruin decision, but I'm not pointing to it for the two-step framework or for intermediate scrutiny. But in footnote 2, this Court said, plaintiffs cannot define the class of arms by the weapons that are being banned. No, but there's two different points then that you're running. One goes to whether the appearance on the roster of other types of guns that are similar makes a difference. And I think the force of Judge Selye's question is, how could it if they're in common use? So that just means your whole argument depends on the idea that because it's merely a restriction on commercial sale, it's not infringing the right because all it does is restrict sale. Nothing about the presence of other guns that are similarly restricted answers whether the restriction as applied to each type of gun is itself significantly impacting your ability to possess it. That's just a separate question. Your Honor, if I understand your question correctly, we do think the question of commercial regulation and restriction on the commercial sale of arms is an independent question. And we do think that when the plaintiff's characterization of this is a handgun ban and the fact that if they can't obtain commercially any handgun that they desire, even though they have the choice not only of over 1,100 through commercial transactions but any handgun through a private transaction, then we really are talking about something close to any regulation because they keep calling it a handgun ban. Can I just push you? There's the question of whether the presumptively lawful category of conditions and qualifications means that if it is a condition or qualification as opposed to something that in practice functions so that you couldn't possess it at all, which you say they haven't pled to show that these kinds of conditions and qualifications on sale are of that type, which I understand that argument. You seem to treat that as a conclusion that leads to the conclusion that therefore it's outside the Second Amendment. Judge Thompson posited that another way to read that language is that that just means it's presumptively lawful. And then the question would then be can you show, can the other side show otherwise, that it's not the kind of condition or qualification that would be lawful as the Second Amendment still applies. And that might affect how one applies the historical inquiry because maybe the burden is on a different party than it otherwise would be. What's your thinking on that? I don't dispute that the presumption can be rebutted. It has to be rebutted plausibly at the 12B6 stage, which plaintiffs haven't done in this case. Again, not only because of what they've pled, but because of how these operators have acted. You're saying, though, that the rebuttal would relate to whether it significantly impacts one's ability to get it. And I think the question is whether it would be at all relevant whether it's a safety regulation or not in the way that other things are historically. Safety regulations have been permitted. Your Honor, I think the presumption could be rebutted by showing that even though this is deemed a commercial regulation, it is not, in fact, a commercial restriction or qualification. I think here there really can't be any dispute and I think it's established as a matter of law that these are solely and exclusively qualifications and restrictions on the commercial sale of arms. That's the only way in which they function. Does it have to bear any resemblance to the kinds of conditions and qualifications that were longstanding and led Heller to identify that category as a meaningful category to characterize as presumptively lawful? Your Honor, I think Heller identified them as presumptively lawful because they were longstanding. So that would suggest that something that is a condition or qualification but is very, very different from the longstanding conditions or qualifications might be treated differently. It might. And in a way, this gets us to the historical inquiry which we haven't touched upon yet. But even if it is our burden to show that this is longstanding, that essentially... Well, I'm asking a different question. Whether the right way to understand it is it's their burden to show it's not like a longstanding one, which is a different question, right? And that would be these conditions or qualifications are longstanding. Here's what they were. They have to show it's sufficiently not like that so that we wouldn't treat it as a condition or qualification, which is a different burden than if it's your burden to show you can identify something that's just like it. Your Honor, I see I'm almost out of time. I do think it is the plaintiff's burden. I think it is their burden to demonstrate that this implicates the text of the Second Amendment. I think it's their burden to show, to overcome the presumption once we've identified this as a condition and qualification on the commercial sale of arms. It's their burden to overcome that presumption. I'm sorry. I thought their argument was different, though. I thought they were saying that just because you call it presumptively lawful doesn't mean the Supreme Court is saying, yes, that's fine, that there's an initial burden on the government to show that the regulation validly fits within your category of presumptively lawful and you do that and that you, in other words, who has the burden in these cases is very important. And I thought they were saying that you have the burden of showing that it is properly put in this category so that the presumption applies in the first place. There's an initial burden before they have to rebut a lawful presumption. I think it is our responsibility to place it in that category. I think we do that as a matter of law here based on the way that these... you're showing that it is a restriction on sale or is part of your burden to show it's a restriction on sale that is enough like long-standing restrictions on sale that Heller said were presumptively lawful. Because that, you could make that showing without showing there is a historical basis for treating this thing as a condition. There isn't. It's just by analogy, right? So you just say it's like it. Then burden would shift to them to say, yeah, but they're wrong and they could show it's not. But that's different than the way they're presenting it, which is that you have to come up with some regulation in history that is this type of thing. Do you follow what I'm saying? I think I do, Your Honor, and let me answer this and maybe if my answer suggests I've misunderstood your question, you can let me know. I think that renders it functionally indistinguishable from the historical aspect of the inquiry. If we are required to demonstrate that this is long-standing in the sense that it's analogous to... and by the way, we are very confident that we do that here with analogs going back to the colonial era, certainly to 1805 in Massachusetts, our proving law and gunpowder inspection laws and the like. But if that's our burden to get even to get into the presumptively lawful category, then that is essentially read out of Heller, which Bruin did not, this category of presumptively lawful regulation. So you say if it's a condition, you're in the category and they then have the burden of showing it's not. Correct. If I could just address the remand point, Your Honors. The party's legal arguments are going to be identical if the court were to remand the case. We'll be making the same arguments about the text, about presumptively lawful regulatory measures, and about the historical tradition. The factual development that might happen is not material to the dispute about how many weapons are not on the roster. It might be one thing if some of those were actually not available to plaintiffs to keep and carry, but in fact, all of them are. So the factual development that the court is talking about we don't think will aid the lower court in rendering a new decision under Bruin. How do we know that all of the firearms are available to the plaintiffs? I know you say so, but there's nothing in the complaint about that. It's because of the operation of the statute and the regs, because they both create exceptions for private sales. Yeah, but how do we know that those private sales actually occur or that private owners have access to those firearms? Aren't those all matters of proof? I don't know much about firearms, but I don't think it's an easy matter to transport them across state lines by private parties looking to put them in the hands of private sellers. Well, Your Honor, if that had any bearing on whether the plaintiffs had a right to engage in armed self-defense were diminished or impacted, then that might be a factually important inquiry. But here, where they retain the right to keep and carry all manner of handguns, not only under the roster through commercial sales, but any handgun through a private sale, there simply is no plausible claim that their right to engage in armed self-defense, which is the central component of the Second Amendment right, has been violated. Thank you. If the plaintiff drove to Rhode Island to buy one of these guns and then drove it back to Massachusetts, is there some kind of restriction on their ability to do that? Yes, Your Honor. A plaintiff cannot do that. So what can happen is if somebody moves to Massachusetts from another state or if somebody is in possession, say a law enforcement official is in possession of one of these weapons that's not on the roster, they can sell it through a private sale. So it may well be the case that it's harder to get one of these particular weapons through a private sale than through a commercial transaction. But we still think that has no bearing on the Second Amendment right. If it has a bearing, are there any facts pleaded in the complaint that would tell us one way or the other? Or do you accept that the complaint is effectively pleading as a factual matter that you can't get access to them if there's a van on the sale? We don't. We don't accept that. Because you say that's just a legal conclusion. And there are no facts about the difficulty of getting it. And it was their burden to include them in the complaint if they wanted to get on that base. That's right. And the allegations on information and belief in paragraphs 36 and 44 that there are a lot of weapons that are not on the roster is simply not enough even to get past the 12B6 stage. Thank you, Your Honors. Thank you, Counsel. At this time, if Attorney Benbrook would reintroduce himself on the record to begin. May it please the Court, Brad Benbrook for the plaintiffs and the appellant. Your Honors, the argument that this regulatory regime is not, quote, not a ban or not working a ban or otherwise not limiting access to guns in common use is simply not correct. They're not arguing it's not limiting. It's plainly limiting it. Excuse me? It's plainly limiting it. They're not saying it's not limiting it. Well, they're saying it's not a ban because... But a ban is that you can't get it. Not that there's a limit. Well, we allege that it operates to prevent for plaintiffs and similarly situated persons to acquire handguns. To prevent? Is that what you say? You allege that it prevents it from happening? Yes. So you say the practical effect is a ban? Yes. The effect of the regulatory regime is to make these handguns unavailable. And there are handguns in common use in 47 other states. And Heller and Bruin say that that is not permissible. And what's your answer to the idea that there needs to be some factual support for that in the complaint beyond the bare statement that they are unavailable? Which is a little bit of a vague word when the statute that you're challenging specifically does not prohibit it from being available. Well, paragraphs 1, 2, 36, and 44 all state that the effect of this regulatory regime is to make them a ban. And that is a factual allegation. And Heller and Cayetano tell us that there's not much factual development that needs to be made at the district court, although we certainly, as in the Rene case, certainly can submit declarations to support the difference between what's on the roster and what is otherwise commercially available throughout the United States. But the suggestion that these allegations don't survive Iqbal is just, that cannot be right. But I would further stress that, or further note that throughout the briefing and here at argument Massachusetts has said that there's more than a thousand handguns on the roster. Well, that may be correct. That doesn't mean they're actually available for sale. The Attorney General's regulations operate independently to substantially limit that number which we've explained in the briefing in large part because of the features requirements that they say in order to be sellable in Massachusetts they must have the magazine disconnect mechanism, the chamber load indicator and the 10-pound trigger pull. So, Your Honors, there are flavors of the You can finish the sentence. Go ahead. Sure. Flavors of the argument that plaintiffs that the Massachusetts maiden is brief that plaintiffs are seeking to have any gun whatsoever despite Heller's statement to that, that the Second Amendment doesn't protect the right to any gun whatsoever. Heller's went on to say that one of the limitations of the Second Amendment is that whatever the other limitations are it does protect guns in common use and handguns are in common use. We urge Your Honors to reverse the District Court. Thank you. That concludes argument in this case.